UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATY BERENICE RODRIGUEZ-MEZA,<br><br>                          Petitioner,<br><br>         v.<br><br>PAMELA BONDI, *et al.*,<br><br>                          Respondents. | Case No. 5:26-cv-01120-FLA (SK)<br><br>**ORDER DENYING PETITIONER'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. 4]** |

## <u>RULING</u>

On March 10, 2026, Petitioner Katy Berenice Rodriguez-Meza ("Petitioner") filed a Petition for Writ of *Habeas Corpus* ("Petition"), pursuant to 28 U.S.C. § 2241, challenging her detention as a violation of the Due Process Clause of the Fifth Amendment, the Fourth Amendment, the Administrative Procedure Act, the Immigration and Nationality Act ("INA"), and applicable regulations.  Dkt. 1.

On March 11, 2026, Petitioner filed the subject *Ex Parte* Application for Temporary Restraining Order ("Application"), requesting the court issue an order "directing Respondents to immediately release Petitioner from custody and barring her re-detention unless and until Respondents prove by clear and convincing evidence at a

1

pre-deprivation bond hearing before a neutral arbiter that she is either a danger to others or a flight risk." Dkt. 4 at 1; *see also* Dkt. 4-1 ("Appl. Br.") at 6.[1]  Respondents oppose the Application.  Dkt. 7 ("Opp'n").  The court finds this matter appropriate for resolution without oral argument.  *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the Application is DENIED.

## BACKGROUND

Petitioner is a citizen of the Republic of Guatemala who was taken into custody and detained by U.S. Customs and Border Patrol on January 9, 2024, after she entered the United States without the necessary legal documents to enter, pass through, or remain in the United States.  Dkt. 4-2 ("Leroy Decl.") ¶ 4; Dkt. 4-3 ("Appl. Exs.") at 3–4.  On February 26, 2024, U. S. Immigration and Customs Enforcement ("ICE") paroled Petitioner into the United States and provided her with a written Interim Notice Authorizing Parole ("Interim Notice").  Appl. Exs. at 6.  The Interim Notice stated that "[her] parole authorization [was] valid for one year beginning from the date on [the] notice and [would] automatically terminate upon [Petitioner's] departure or removal from the United States or at the end of the one-year period unless ICE provide[d] [her] with an extension at its discretion." *Id.*

On August 28, 2025, Petitioner was arrested and detained when she appeared for a routine, check-in appointment with ICE in San Bernardino, California.  Leroy Decl. ¶ 5.  On August 30, 2025, Petitioner received a Notice to Appear, which stated she was subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i) ("§ 1182(a)(6)(A)(i)"), as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Appl. Exs. at 28.  On January 6, 2026, Petitioner filed a Form I-589, Application for Asylum and Withholding of Removal ("Asylum Application"),

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

which remains pending.  Appl. Exs. at 8–24; Leroy Decl. ¶ 8.

On February 27, 2026, Petitioner appeared before an Immigration Court, for a custody redetermination proceeding pursuant to 8 C.F.R. pt. 1236.  Appl. Exs. at 33.  The Immigration Court denied Petitioner's request for release on bond because of "Flight Risk."  *Id.*  Petitioner has reserved the right to file an appeal.  *Id.* at 34.

## DISCUSSION

### I.      Legal Standard

"[T]he usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits."  *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963).  "The status quo is the last uncontested status which preceded the pending controversy."  *Id.* at 809 (citation and quotation marks omitted).

A plaintiff seeking a preliminary injunction or temporary restraining order "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).  A "serious question" is one on which the movant "has a fair chance of success on the merits."  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

The Ninth Circuit follows a "sliding scale" approach to the four preliminary injunction elements, such that "a stronger showing of one element may offset a weaker showing of another, as long as plaintiffs establish that irreparable harm is likely."  *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (cleaned up).  The first factor, "likelihood of success on the merits[,] is the most import factor—and even more so

when a constitutional injury is alleged." *Matsumoto v. Labrador*, 122 F.4th 787, 804 (9th Cir. 2024).

**II.    Analysis**

**A.    Apprehension, Detention, and Parole of Aliens under the INA**

"An arriving noncitizen seeking admission into the United States at a U.S. Port of Entry is 'processed either through expedited removal proceedings or through regular removal proceedings.'" *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1156–57 (S.D. Cal. 2025) (quoting *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019)).  "The regular removal procedure is also known as 'section 240 proceedings,'" which "involve an evidentiary hearing before an immigration judge and the ability for the individual to apply for asylum if he would be persecuted upon return to his home country." *Id.* (citing 8 U.S.C. § 1229a(a)(1), (b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)).  "Noncitizens seeking asylum are guaranteed due process under the 5th Amendment throughout this process." *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

8 U.S.C. § 1226 governs the apprehension and detention of aliens, and states in relevant part:

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) [detention of criminal aliens] and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole[.]  …

/ / /

/ / /

4

**(b) Revocation of bond or parole**

> The Attorney General at any time may revoke a bond or parole
> authorized under subsection (a), rearrest the alien under the
> original warrant, and detain the alien.

8 U.S.C. § 1226(a), (b)

"Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release [a non-criminal alien], under the conditions at [§ 1226(a)(2) and (3)]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).[2]

Pursuant to § 1182(d)(5)(A), "[t]he Secretary of Homeland Security may, … in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States," with exceptions not applicable here.[3]  "[S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

Termination of parole is governed by 8 C.F.R. § 212.5(e), which states in relevant part:

> (1) Automatic.  Parole shall be automatically terminated without
> written notice (i) upon the departure from the United States of the
> alien, or, (ii) if not departed, at the expiration of the time for which
> parole was authorized, and in the latter case the alien shall be

---

[2] Pursuant to 8 C.F.R. § 1236.1(b)(1), "[a] warrant of arrest may be issued only by those immigration officers listed in [8 C.F.R. § 287.5(e)(2).]"

[3] 8 C.F.R. § 212.5(a) identifies additional categories of officials who may exercise the Secretary's authority to grant or deny parole.

processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.

(2)(i) On notice.  In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.  …

8 C.F.R. § 212.5(e)(1)–(2)(i).

### B.    *Winter* Factors as to Petitioner's Due Process Claim

A writ of *habeas corpus* may be granted to any petitioner who demonstrates "[she] is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(a), (c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *Rasul v. Bush*, 542 U.S. 466, 474 (2004).  A petitioner "bears the burden of demonstrating that [s]he is in custody in violation of the Constitution or laws or treaties of the United States."  *Noori*, 807 F. Supp. 3d at 1159 (cleaned up).

Petitioner argues that she is likely to succeed on the merits of her claims because "[t]he Due Process Clause of the Constitution makes it unlawful for Respondents to arrest Petitioner after they released her, without first providing a ***pre-deprivation*** hearing at which an immigration judge determines whether circumstances have so materially changed since her release in 2024 that a re-detention may be necessary."  Appl. Br. at 15 (emphasis in original).  According to Petitioner, "the Ninth Circuit has held that ICE has no authority to re-detain an individual absent changed circumstances."  *Id.* (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788

(9th Cir. 2021)).  Respondents contend Petitioner's arrest and re-detention were lawful because her parole terminated automatically after one year, and ICE did not exercise its discretion to grant an extension.  Opp'n at 2.

Petitioner does not provide any evidence to establish ICE or any other authorized agency or representative of the government granted her an extension of her parole.  *See* Appl. Exs.  Accordingly, Petitioner was not entitled to written notice prior to being "restored to the status that … she had at the time of parole," which was immigration detention.  *See* 8 C.F.R. § 212.5(e)(1), (2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("when the purpose of such parole shall … have been served[,] the alien shall forthwith return or be returned to the custody from which [s]he was paroled and thereafter [her] case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States").[4]

Petitioner cites cases including *Hasratyan v. Bondi*, No. 5:26-cv-00210-MCS (ADS), 2026 WL 288909 (C.D. Cal. Feb. 2, 2026), to argue courts have ordered noncitizen parolees to be released in similar circumstances.  Appl. Br. at 15; Dkt. 8 ("Reply") at 1.  *Hasratyan* and the other cases Petitioner cites are inapposite and distinguishable, as those petitioners' paroles had not terminated automatically at the expiration of the time for which parole was authorized, unlike here.  Petitioner does not cite any legal authority to establish that an alien cannot lawfully be arrested and

---

[4] *Panosyan*, 854 F. App'x at 788, is inapposite to the circumstances at hand, as that decision concerned whether a *habeas* petition was mooted by the Immigration Court's grant of the petitioner's request for release on bond, which ICE chose not to appeal. The Ninth Circuit held that because it "[could] be satisfied that the alleged wrongful detention [would] not recur absent changed circumstances," the petitioner's release on bond rendered the *habeas* petition moot.  *Id.* (cleaned up).  Even if the court were to assume *arguendo* that *Panosyan* bars Respondents from detaining Petitioner absent materially changed circumstances, as Petitioner contends, the automatic termination of Petitioner's parole constitutes materially changed circumstances under the express language of the INA and applicable regulations.  *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(1), (2)(i).

detained upon the automatic termination of their parole absent notice, a pre-deprivation hearing, and additional changed circumstances as she argues is required.[5] Petitioner's argument, thus, fails.

Petitioner further argues that the Immigration Court determined she was a flight risk erroneously—particularly in light of ICE's prior decision to release her on parole. Appl. Br. at 16–17 (citing *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011)). District courts, however, lack jurisdiction to review the merits of the Immigration Court's bond decision. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1212–13 (9th Cir. 2022) (holding federal courts lack jurisdiction to review an Immigration Court's bond decision absent a constitutional defect), *overruling in relevant part Singh*, 638 F.3d 1196.[6]

Accordingly, the court finds Petitioner does not meet her burden to demonstrate either a likelihood of success on, or the existence of "serious questions" going to the merits of, her claims. Having found Petitioner has not satisfied the first element of the *Winter* test, the court need not address the remaining factors.

/ / /

---

[5] Petitioner cites *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972), to argue she has a protected interest in her ongoing liberty because "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if [s]he fails to live up to the parole conditions." Appl. Br. at 19. The Interim Notice, however, stated expressly that her parole would "automatically terminate … at the end of the one-year period unless ICE provide[d] [her] with an extension at its discretion." Appl. Exs. at 6. By accepting parole under the conditions and with the one-year limit offered, Petitioner at least implicitly acknowledged and accepted that she might be re-detained after that one-year period at ICE's discretion. Petitioner's liberty interest differs from that of an individual paroled into the United States without such temporal limit.

[6] Petitioner contends the August 30, 2025 Notice to Appear identified her as "an arriving alien" erroneously. Appl. Br. at 10. As Petitioner was "restored to the status that … she had at the time of parole" upon the automatic termination of her parole, she appears to qualify as an "arriving alien" notwithstanding the time she was present in the United States on parole. *See* 8 C.F.R. § 212.5(e)(1)–(2)(i).

## CONCLUSION

For the reasons stated, the Application is DENIED.


IT IS SO ORDERED.


Dated: April 9, 2026

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

9